Daniel Sadeh, Esq.
**HALPER SADEH LLP**
375 Park Avenue, Suite 2607
New York, NY 10152
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ARIEL MELOOL,<br><br>    Plaintiff,<br><br>    v.<br><br>TELARIA, INC., PAUL CAINE, DOUG KNOPPER, WARREN LEE, RACHEL LAM, JAMES ROSSMAN, ROBERT SCHECHTER, KEVIN THOMPSON, and MARK ZAGORSKI,<br><br>    Defendants. | Case No:<br><br><br>JURY TRIAL DEMANDED |

Plaintiff Ariel Melool ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

**NATURE OF THE ACTION**

1.      This is an action against Telaria, Inc. ("Telaria" or the "Company"), and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection

1

with the proposed acquisition (the "Proposed Transaction") of Telaria by The Rubicon Project, Inc. ("Rubicon") and Madison Merger Corp. ("Merger Sub"), a wholly owned subsidiary of Rubicon.

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered and subsequent damages occurred in this District, and the Company conducts business in New York, New York.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of Telaria's common stock.

7. Defendant Telaria provides a software platform for publishers to manage and monetize video advertising in the United States. The Company is incorporated in Delaware with principal executive offices located in New York, New York. The Company's common stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol, "TLRA."

2

8. Defendant Paul Caine ("Caine") is the Non-Executive Chairman of the Board of the Company.

9. Defendant Doug Knopper ("Knopper") is a director of the Company.

10. Defendant Warren Lee ("Lee") is a director of the Company.

11. Defendant Robert Schechter ("Schechter") is a director of the Company.

12. Defendant Mark Zagorski ("Zagorski") is Chief Executive Officer and a director of the Company.

13. Defendant Rachel Lam ("Lam") is a director of the Company.

14. Defendant James Rossman ("Rossman") is a director of the Company.

15. Defendant Kevin Thompson ("Thompson") is a director of the Company.

16. Defendants Caine, Knopper, Lee, Schechter, Zagorski, Lam, Rossman, and Thompson are collectively referred to herein as the "Individual Defendants."

17. Defendants Telaria and the Individual Defendants are collectively referred to herein as the "Defendants."

## OTHER RELEVANT ENTITIES

18. Rubicon, together with its subsidiaries, provides technology solutions to automate the purchase and sale of digital advertising inventory for buyers and sellers in the United States and internationally. The Company is incorporated in Delaware with principal executive offices located in Los Angeles, California. The Company's common stock trades on the NYSE under the ticker symbol, "RUBI."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

19. On December 19, 2019, Telaria and Rubicon issued a press release announcing that

3

they had entered into a definitive merger agreement to combine in a stock-for-stock merger. Under the terms of the agreement, each share of Telaria common stock issued and outstanding as of the effective time of the merger would be converted into the right to receive 1.082 shares of Rubicon common stock (and, if applicable, cash in lieu of fractional shares) less any applicable withholding taxes. The press release states, in pertinent part:

### Rubicon Project and Telaria Agree to Combine to Form Largest Independent Sell-Side Advertising Platform, Poised to Capture Growth in Connected TV

*Buyers Gain an Essential Omnichannel Partner Across All Formats and Geographies*

- Stock-for-stock merger at an exchange ratio of 1.082 shares of Rubicon Project (NYSE:RUBI) common stock for each share of Telaria (NYSE: TLRA) common stock, with Telaria stockholders expected to own approximately 47.1% and Rubicon Project stockholders expected to own approximately 52.9% of the fully diluted shares of the combined company
- Combined company will offer a single platform for transacting Connected TV (CTV), desktop display, video, audio, and mobile inventory across all geographies and auction types
- Upon closing, Michael Barrett will be named Chief Executive Officer of the combined company, Mark Zagorski will be named President & Chief Operating Officer and David Day will be the Chief Financial Officer
- Telaria board member Paul Caine will be Chairperson of the Board of Directors of the combined company. The full board will consist of nine members; four existing directors from each company and Michael Barrett, CEO
- Over the 12-month period ended September 30, 2019, Telaria and Rubicon Project's aggregate revenue was $217 million, a 32% increase over the same period of the prior year
- Combined company will have diversified revenue streams, substantial Adjusted EBITDA and a strong balance sheet with approximately $150 million in cash and no debt based on September 30, 2019 balances
- Merger expected to create meaningful revenue and cost synergies, with expected annual run rate cost synergies of approximately $15-20 million

December 19, 2019 06:08 AM Eastern Standard Time

LOS ANGELES & NEW YORK--(BUSINESS WIRE)--Rubicon Project (NYSE:RUBI), the global exchange for advertising, and Telaria (NYSE: TLRA), the complete software platform that optimizes yield for leading video publishers,

announced today that they have entered into a definitive agreement to combine in a stock-for-stock merger. The transaction, which has been unanimously approved by the Boards of Directors of both companies, will create the world's largest independent sell-side advertising platform, poised to capture growth in CTV.

Together, Rubicon Project and Telaria will enable thousands of publishers to connect with hundreds of buyers and brands, creating a global, independent alternative to closed players in the ecosystem. In addition, the combined company will be an essential omnichannel partner for buyers across formats, screens and geographies. Both companies bring premium publisher partnerships and unique technical capabilities: Telaria as a leader in CTV, and Rubicon Project as an expert in scaled programmatic operations.

*     *     *

**Transaction Details**

Under the terms of the merger agreement, each share of Telaria common stock issued and outstanding as of the effective time of the Merger will be converted into the right to receive 1.082 shares of Rubicon Project common stock (and, if applicable, cash in lieu of fractional shares) less any applicable withholding taxes. Upon closing, Telaria stockholders are expected to own approximately 47.1% and Rubicon Project stockholders are expected to own approximately 52.9% of the fully diluted shares of the combined company.

**Governance and Leadership**

Upon closing, Michael Barrett will be named Chief Executive Officer of the combined company, Mark Zagorski will be named President & Chief Operating Officer and David Day will be the Chief Financial Officer. Telaria board member Paul Caine will be Chairperson of the Board of Directors of the combined company. The full board will consist of nine members; four existing directors from each company and Michael Barrett, CEO.

**Timing and Approvals**

The transaction, which is expected to close in the first half of 2020, is subject to the receipt of required regulatory approvals and other customary closing conditions and the approval of stockholders of both companies.

**Advisors**

LUMA Partners LLC and Needham & Company, LLC are serving as financial advisors to Rubicon Project, and Gibson, Dunn & Crutcher LLP is serving as its legal advisor. RBC Capital Markets, LLC is serving as financial advisor to Telaria, and Cooley LLP is serving as its legal advisor.

20. On February 13, 2020, Defendants caused to be filed with the SEC a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") pursuant to Section 14(a) of the Securities Exchange Act in connection with the Proposed Transaction.

### B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions

21. The Proxy Statement, which recommends that Telaria shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Telaria's and Rubicon's financial projections; (ii) the financial analyses performed by Telaria's financial advisor, RBC Capital Markets, LLC ("RBC"), in connection with its fairness opinion; and (iii) the sales process leading up to the Proposed Transaction.

22. The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Reasons for the Merger (which includes "Telaria's Reasons for the Merger"); (ii) Recommendation of the Telaria Board; (iii) Background of the Merger; (iv) Opinion of Telaria's Financial Advisor; (v) Certain Unaudited Prospective Financial Information Prepared by Telaria or Used at Telaria's Direction; and (vi) Certain Unaudited Prospective Financial Information Prepared by Rubicon Project or Used at Rubicon Project's Direction.

23. Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated March 30, 2020 shareholder vote, Telaria shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

### 1. Material Omissions Concerning Telaria's and Rubicon's Financial Projections

24. The Proxy Statement omits material information concerning Telaria's and

Rubicon's financial projections.

25. The Proxy Statement provides that, "[i]n connection with evaluating a possible transaction with Rubicon Project, . . . Telaria's management provided to the Telaria board certain unaudited prospective financial information for the calendar years 2019 through 2023, which forecasts were extrapolated for calendar years 2024 through 2029" (the "Telaria Projections").

26. The Proxy Statement provides that, "[i]n connection with evaluating a possible transaction with Telaria, . . . Rubicon Project's management provided certain unaudited prospective financial information for calendar years 2019 through 2023, referred to as the Rubicon Project forecasts, to the Rubicon Project board, Needham & Company and Telaria" (the "Rubicon Projections").[1]

27. The Proxy Statement provides the "estimated amounts of unlevered free cash flow for the pro forma combined company for the calendar years 2020 through 2023" (the "Pro Forma Projections").

28. The Proxy Statement, however, fails to disclose the following concerning the Telaria Projections, Rubicon Projections, and the Pro Forma Projections: (1) all line items used to calculate (a) Adjusted EBITDA, and (b) Unlevered Free Cash Flow; and (2) a reconciliation of all non-GAAP to GAAP metrics.

29. When a company discloses non-GAAP financial metrics in a Proxy Statement that was relied upon by its board in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by

---

[1] The Rubicon Projections were provided to Telaria management, the Telaria Board and RBC. The Rubicon Projections were "extrapolated for calendar years 2024 through 2029."

schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100. The SEC has increased its scrutiny of a company's use of non-GAAP financial measures as such measures can be misleading and "crowd out" more reliable GAAP information.[2]

30. The disclosure of this projected financial information is material because it would provide Telaria shareholders with a basis to project the future financial performance of Telaria and the combined company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Telaria and its financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

31. Accordingly, in order to bring the Proxy Statement into compliance with SEC regulations, as well as to cure the materially misleading nature of the projections, Defendants must provide a reconciliation table of the aforementioned non-GAAP metrics to their most comparable GAAP metrics. Defendants must also disclose the line item projections that were used to calculate

---

[2] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Feb. 15, 2020) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

these non-GAAP metrics. Such projections are necessary to make the non-GAAP projections included in the Proxy Statement not misleading.

32. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Telaria shareholders.

### 2. Material Omissions Concerning RBC's Financial Analyses

33. In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by RBC.

34. The Proxy Statement fails to disclose the following concerning RBC's "*Discounted Cash Flow Analyses*" of Telaria and Rubicon: (1) all line items underlying the standalone unlevered, after-tax free cash flows that Telaria and Rubicon were forecasted to generate during the fiscal years ending December 31, 2020 through December 31, 2029; (2) the terminal values for Telaria and Rubicon; and (3) the individual inputs and assumptions underlying the (i) range of perpetuity growth rates of 3.0% to 4.0%, and (ii) range of discount rates of 10.0% to 12.5%, and of 12.5% to 15%.

35. With respect to RBC's analysis of research analysts' forward stock price targets for Telaria common stock, the Proxy Statement fails to disclose: (1) the individual price targets for Telaria observed by RBC in its analysis; and (2) the sources of those price targets.

36. The valuation methods, underlying assumptions, and key inputs used by RBC in rendering its purported fairness opinion must be fairly disclosed to Telaria shareholders. The description of RBC's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without this information, the Company's shareholders are unable to fully understand RBC's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total

9

mix of information available to Telaria shareholders.

### 3. Material Omissions Concerning the Sales Process Leading up to the Proposed Transaction

37. The Proxy Statement omits material information concerning the sales process leading up to the Proposed Transaction.

38. The Proxy Statement provides that, in November 2019, Telaria entered into confidentiality agreements with "[i]nterested parties," stating in pertinent part:

> In November 2019, at the direction of the Telaria board, Telaria management developed, with the assistance of RBC Capital Markets, a list of 21 parties that might have a potential interest in a possible acquisition of or strategic combination with Telaria. At the direction of the Telaria board, RBC Capital Markets contacted such parties to determine if such parties would be interested in a strategic combination with Telaria. Interested parties were provided access to a Telaria virtual due diligence data room after signing a confidentiality agreement and Telaria management held in-person meetings with two of such parties.

39. The Proxy Statement, however, fails to disclose whether Telaria's confidentiality agreements contained standstill provisions with "don't ask, don't waive" ("DADW") provisions (including their time of enforcement) that would preclude these interested parties from making offers for Telaria.

40. Defendants began to speak on this subject by revealing that the non-disclosure agreement between Telaria and Rubicon contained a standstill provision which would terminate under certain conditions.[3]

---

[3] The Proxy Statement provides the following:

> On September 20, 2019, . . . Rubicon Project and Telaria entered into an amendment to their existing non-disclosure agreement to include a mutual standstill provision. The amendment provided that the standstill would terminate with respect to a party upon the earliest of one year following the date of the amendment, the date on which the other party enters into or publicly announces a business combination, the

10

41. Without this information, the Company's shareholders may have the mistaken belief that potential buyers are or were permitted to submit superior proposals for the Company, when in fact they are or were contractually prohibited from doing so. This information is material because a reasonable Telaria shareholder would want to know, prior to voting for or against the Proposed Transaction, whether other potential buyers are or were foreclosed from submitting a superior proposal.

42. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Telaria shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

43. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

44. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

45. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the

---

> commencement of a tender offer or exchange offer for the other party's securities that if consummated would constitute a business combination or the acquisition of 50% or more of the voting power of the other party's securities.

Proxy Statement at 54.

11

mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

46. The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

47. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

48. Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

49. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

50. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

51. Each of the Individual Defendants was provided with or had unlimited access to

copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

52. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

53. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

54. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

55. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions

as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E. Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.


Dated: February 15, 2020                    Respectfully submitted,

                                                          **HALPER SADEH LLP**

                                                          By: /s/ Daniel Sadeh
                                                          Daniel Sadeh, Esq.
                                                          Zachary Halper, Esq. (to be admitted *pro hac vice*)

375 Park Avenue, Suite 2607
New York, NY 10152
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
       zhalper@halpersadeh.com

*Counsel for Plaintiff*